# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# CHARLESTON DIVISION

| | | |
|---|---|---|
| FERALLOY CORPORATION, | ) | Civil Action No. 2:09-3028-RMG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER** |
| | ) | |
| SPIG INDUSTRY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action was filed by Feralloy Corporation ("Feralloy") alleging causes of action for breach of contract, unjust enrichment, misrepresentation, account stated, and breach of contract accompanied by a fraudulent act.[1] The Defendant SPIG has also asserted a counterclaim against Feralloy.

On February 15, 2010, SPIG filed a motion to transfer venue of this case to the Western District of Virginia.[2] After receiving an extension of time, Feralloy filed a memorandum in opposition on April 15, 2010. In the interim, Cook was served with the Complaint on April 7,

---

[1]All causes of action are against the Defendant SPIG Industry, Inc. ("SPIG"). While the Complaint initially also included a cause of action for misrepresentation against Wade Cook ("Cook"), Feralloy filed a voluntary dismissal, without prejudice, as to Cook on June 14, 2010. See discussion, infra.

[2]Feralloy originally filed suit in the Northern District of Illinois, Eastern Division. See Court Document No. 13-4, pp. 16-26. That action was dismissed for lack of personal jurisdiction over SPIG and Cook. Id. Feralloy then re-filed in the District of South Carolina.



2010.  <u>See</u> Court Document No. 28.  After also receiving extensions of time, Cook filed a motion

to dismiss or in the alternative to transfer venue to the Western District of Virginia on May 24, 2010.

Feralloy voluntarily dismissed Cook as a party Defendant, without prejudice, on June

14, 2010, following which SPIG filed a supplemental memorandum in support of its motion to

transfer venue on June 23, 2010.[3]  A hearing was held on August 24, 2010, at which both parties

were represented by able counsel.  This matter is now before the Court for disposition.

### Background

The parties to the case were identified in Feralloy's previous case as follows:

> Feralloy, a steel processor, is a Delaware corporation with multiple offices
> nationwide, including an office in Charleston, South Carolina, a facility in Hu[g]er,
> South Carolina [ ], and its headquarters in Chicago, Illinois.  SPIG, a manufacturer
> of steel highway guardrails, is a Virginia corporation with its principal place of
> business in Bristol, Virginia.  Cook is a citizen of the State of Tennessee and the
> former general manager of SPIG[4].

<u>See</u> Court Document No. 13-4, p. 17.

SPIG manufactures and sells steel guardrails to various states - for use on highways

and other major roads.  <u>Id</u>.  Cook attests that he contacted Feralloy's office in South Carolina by

telephone to obtain a quote to purchase some steel for use in the State of Virginia, and that Feralloy's

sales representative, Dave Lippucci, responded by telephone and also traveled to meet with Cook.

Cook attests that he sent SPIG's credit application and all purchase orders from Virginia, that

Feralloy's bid was sent by Lippucci from South Carolina, that he submitted his purchase orders to

---

[3]Feralloy filed a motion to strike SPIG's Supplemental Memorandum, which was denied.
<u>See</u> Order filed on August 20, 2010.

[4]Although Cook has now been dismissed as a party Defendant, he remains an important
witness in this case.



South Carolina, and that the steel was F.O.B. Huger, South Carolina.  <u>See</u> Cook Affidavit (dated April 16, 2009); <u>see</u> <u>also</u> Cook Supplemental Affidavit (dated July 8, 2009).  Cook attests that SPIG then sent its trucks in June and July 2008 to pick up the steel from South Carolina, that Feralloy subsequently also delivered steel to Virginia, and SPIG sent payments to Illinois and South Carolina. <u>Id</u>.  Cook also attests that although SPIG purchased the steel from Feralloy, that Feralloy obtained the steel from Nucor Steel's South Carolina plant.  <u>Id</u>.  Nucor Steel produces, galvanizes and cuts the steel pursuant to the instructions provided by steel purchasers, including Feralloy, and after receiving the steel from Nucor, Feralloy's South Carolina plant rolled and prepared the steel to be provided to SPIG.  <u>Id</u>.

SPIG was subsequently notified that the steel purchased from Feralloy did not meet the safety standards required by the Virginia Department of Transportation ("Virginia DOT").  <u>Id</u>. SPIG then apparently attempted to cancel its orders, and its accounts with Feralloy were apparently not paid, leading to this lawsuit.  <u>Id</u>.

<u>**Discussion**</u>

SPIG seeks transfer of this case to the Western District of Virginia, where it is based. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other division where it might have been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice."

No party contests that this action could have been brought in Virginia; therefore, that requirement of § 1404(a) is satisfied.  However, it is also undisputed that SPIG is subject to personal jurisdiction in South Carolina; therefore, whether or not this case can be brought in the District of South Carolina is also not at issue. It can.  Rather, the sole issue before the Court is whether, for the

3



convenience of parties and witnesses and in the interest of justice, this case should be transferred to the Western District of Virginia. 28 U.S.C. § 1404(a). As the moving party, SPIG bears the burden of proving by at least a preponderance of the evidence that transfer is appropriate under the statute. Avant v. Travelers Ins. Co., 668 F.Supp. 509 (D.S.C. 1987); Gerber v. Canfield, 315 F.Supp. 1175, 1177 (D.S.C. 1970); JEC Consulting & Trading, Inc. v. Diversified Foods, Inc., No. 05-2295, 2005 WL 2614903 at *4 (D.S.C. Oct. 13, 2005).

        In deciding whether to order transfer of this case, the Court must consider several factors. First, the Court must decide what weight to give to Feralloy's choice to bring this action in South Carolina. A Plaintiff's choice of forum will rarely be disturbed unless the balance is strongly in favor of the movant; JEC Consulting & Trading Co., 2005 WL 2614903 at * 4 (citing Figgie Intern., Inc. v. Destileria Serralles, Inc., 925 F.Supp. 411 (D.S.C. 1996); see, e.g., Lony v. E.I. Du Pont De Nemours & Co., 935 F.2d 604, 608-609 (3d Cir. 1991); Reynolds Metals Co. v. FMALI, Inc., 862 F.Supp. 1496, 1501 (E.D.Va. 1994); although if the cause of action has little connection with the chosen forum, the Plaintiff's choice is given less weight. Mead Corp. v. Oscar J. Boldt Constr. Co., 508 F.Supp. 193, 198 (S.D.Ohio 1981). Here, the causes of action in this case have sufficient connections with Feralloy's chosen forum to put the onus on SPIG to establish a strong need for transfer.

        Second, this Court must determine whether transfer would truly be for the convenience of the parties and witnesses. In assessing this factor, the "[r]elative financial impact- when litigation would effect more hardship on one party than another - is a common part of convenience analysis." American Commercial Lines, Inc. v. Northeast Maritime Institute, Inc., 588 F.Supp.2d 935, 945 (S.D.Ind. 2008) (citing SRAM Corp. v. SunRace Roots Enterprise Co. Ltd., 953



4

F.Supp. 257 (N.D.Ill. 1997). This factor favors the Defendant. Feralloy is a large steel processor with multiple offices nationwide while also doing business in Mexico, with its headquarters being located in Chicago, Illinois. <u>See</u> Court Document No. 13-4, p. 17. Further, based upon the submissions to the Court, Feralloy's employees often travel. SPIG, by contrast, is a small business, employing only eleven (11) people from April 2008 until February 2009. <u>See</u> Cook Supplemental Affidavit (dated July 8, 2009). SPIG's only office location is in Virginia, and the Company could potentially have to shut down operations if the trial was to take place in South Carolina. <u>See</u> Arrants Affidavit, ¶ ¶ 20-24. <u>Cf.</u> <u>American Commercial Lines, Inc.</u>, 588 F.Supp.2d at 945; <u>see also</u> <u>Muzzarelli v. Landry's Restaurants, Inc.</u>, No. 02-7622, 2003 WL 1720065 at * (N.D.Ill. 2003)["It is clear that Defendant, as a national corporation doing business in this jurisdiction, is in a better position to bear the expense of trial in Illinois than Plaintiff could bear the expense of trial in Florida."]; <u>SRAM Corp.</u>, 953 F.Supp. 257 [finding that convenience weighed in favor of transfer from Illinois to California, when the Illinois manufacturer was a large international company and the defendant was a small California-based business with only a handful of employees]. Therefore, because Feralloy is better suited to litigate in Virginia while continuing its regular business operation than SPIG is suited to continue the operation of its business if the case were to proceed in Charleston, the convenience of the parties weighs in favor of granting SPIG's motion to transfer.

Additionally, even "[m]ore important than convenience to the parties, . . . is consideration of any potential convenience or inconvenience to non-party witnesses. This factor is often deemed the 'most important factor in the transfer balance.'" <u>American Commercial Lines, Inc</u>, 588 F.Supp.2d at 946 (quoting <u>Rose v. Franchetti</u>, 713 F.Supp. 1203 (N.D.Ill. 1989)). In deciding this issue, the Court should consider the convenience of witnesses in terms of time and travel; <u>De</u>



Lay & Daniels, Inc. v. Allen M. Campbell Co., 71 F.R.D. 368, 372 (D.S.C. 1976); Bridgeman v. Bradshaw, 405 F.Supp. 1004, 1007 (D.S.C. 1975); as well as such collateral matters as the location of documents and other evidence. De Lay & Daniels, Inc., 71 F.R.D. at 372. Here, Cook, the former manager of SPIG and arguably the most important witness, is a citizen of Tennessee, but resides on the border less than twenty (20) miles from the Abingdon, Virginia Courthouse. See Arrants Affidavit, ¶ 27 [5]; see also Cook 2d Supp. Affidavit (dated May 12, 2010)[6]. Cook resigned from SPIG in February 2009 for family and health reasons. See Cook 2d Supp. Affidavit (dated May 12, 2010), ¶ 11. Cook attests that he has been diagnosed with Tardive Dyskinesia ("TD"), which is characterized by repetitive, involuntary, and purposeless movements. Id at ¶¶ 12. Cook attests that his symptoms include "rapid movement of my extremities, impaired movement of my fingers, repetitive tics and spasms, grimacing, tongue protrusion, pursing of the lips and rapid eye blinking." Id. at ¶ 13. Cook also attests that his treating physicians have advised him not to travel for long distances and that failure to follow these recommendations would be detrimental to his health." Id. at ¶ 14. Since September 2009, Cook has resided at the residence of his caretaker in Bristol, Tennessee due to his health condition. Id. at 16. As noted, Abingdon, Virginia is less than twenty (20) miles from Bristol, Tennessee, and Bristol, Virginia.[7] Cook attests that when he has an attack of symptoms, he must seek medical treatment within an hour from a physician who is familiar with

_____

[5]Denise Arrants is SPIG's Chief Financial Officer and Controller.

[6]Cook submitted two affidavits in the earlier case filed in Illinois. He also submitted an affidavit with his motion to dismiss or in the alternative to change venue which was filed on May 24, 2010. His affidavit filed with his motion to dismiss was also submitted as an attachment to SPIG's supplemental memorandum and is referred to as Cook 2d Supp. Affidavit.

[7]The town of Bristol spans the Tennessee-Virginia border. Id.



his condition and prescriptions.  Id. at ¶ 15.  Cook's primary physician, James H. Schrenker, M.D., is located in Bristol, Virginia.  Id. at ¶ 17.  Cook attests that as a result of his condition, it will be very difficult for him to testify at trial, but that with adequate breaks and subject to his physician's approval, he can give a deposition in Bristol, Tennessee, since he would be in close proximity to Dr. Schrenker.  Id. at ¶ 18,

Dr. Schrenker attests that he is Cook's physician, that Cook has been his patient for several years, and that he regularly sees Cook at the Bristol Clinic.  See Schrenker Affidavit, ¶ 4. Dr. Schrenker attests that Cook is also treated by a psychiatrist and neurologist in Memphis, Tennessee.  Id. at ¶ 5.  Dr. Schrenker attests that to a reasonable degree of medical certainty that Cook has TD, a neurological syndrome caused by the long-term use of neuroleptic drugs and characterized by repetitive, involuntary, and purposeless movements.  There is no standard treatment for TD, with treatment being  highly individualized.  Id. at ¶ ¶ 7 and 8.  Dr. Schrenker attests that Cook's symptoms are severe, disruptive, and potentially detrimental to his health, that he should not drive a car for long distances and should limit any travel, and that failure to follow these recommendations would be detrimental to Cook's health.  Id. at ¶ 9.  Dr. Schrenker also opines that when Cook has an attack, he should seek medical treatment within an hour, and that due to the highly individualized nature of treatment for TD, Schrenker strongly recommends that when Cook seeks this medical treatment, it should be from a physician who is familiar with his condition and prescriptions.  Id.at ¶ 11.  Finally, Schrenker attests that it is his medical opinion that it would be detrimental to Cook's health to travel to Charleston, South Carolina.  Id. at ¶ 11.  In addition to Cook, a review of the material filed with the Court shows that SPIG's current employee witnesses, as well as four additional witnesses, are all also located in Virginia.  See Arrants Affidavit.



By contrast, Ferralloy's employees/witnesses are not all in South Carolina. Mark White, Ferralloy's operation manager, and Brian Odgers, an Inside Salesperson for Ferralloy, both work out of Ferralloy's Huger, South Carolina distribution center. <u>See</u> White Affidavit, ¶ 7; Odgers Affidavit, ¶ 7. However, Paul Herrman, Vice President and General Manager of Ferralloy's Southeast region, resides in Alabama, although he attests that he presently spends one-half of his time working out of Ferralloy's Huger, South Carolina distribution center. <u>See</u> Herrmann Supplemental Affidavit, ¶¶ 1, 10. Jack Love, Ferralloy's Vice President Finance and CFO, resides in Illinois, as does Michael Borzych, Ferralloy's Accounting Manager. With respect to Ferralloy's South Carolina and Alabama witnesses, although they attest to the hardship involved if they had to travel to Virginia for this case; <u>see</u> Herrmann Supplemental Affidavit, ¶¶10-17; White Affidavit, ¶¶ 5-10; Odgers Affidavit, ¶¶ 5, 7-9; the Court cannot help but note that Ferralloy initially sought to try this case in Illinois, which would have required these employees to travel an even greater distance. Further, Ferally's Illinois witnesses will have to travel in any event, either to Virginia or South Carolina, although both attest that they could work out of the Plaintiff's Huger, South Carolina distribution center if the trial were here. <u>See</u> Love Affidavit, ¶¶ 6,9; Borzych Affidavit, ¶¶ 1, 5, 8-10.[8] Additionally, the Court notes that Ferralloy's argument focuses on party witnesses, a number of whom already travel regularly as part of their work for the Plaintiff. <u>Cf</u>. <u>American Commercial Lines, Inc</u>, 588 F.Supp.2d at 946 [noting that Plaintiff's argument was less convincing where the focus was on party witnesses who were employees, one of whom traveled extensively and who the court found was quite capable of traveling for the trial].

      Conversely, since Cook is a non-party, even though he is a primary witness for SPIG,

---

[8]Love and Borzych also set forth their expected testimony in this case in their affidavits.



8

he cannot be compelled to attend court proceedings in South Carolina, and apparently could not do so due to heath concerns in any event. Four of SPIG's other witnesses, who may provide important factual information about whether the steel at issue met the specifications required in Virginia, are not present or past employees of SPIG and also cannot be compelled to attend a trial in South Carolina (there has been no evidence presented about their willingness or unwillingness to appear voluntarily in South Carolina).[9] SPIG notes that the "South Carolina District Court has held that a party's inability to compel the attendance of certain crucial witnesses to trial is an important consideration in a motion to change venue." <u>See</u> Defendants' Memorandum, p. 10 (citing <u>DeLay & Daniels, Inc.</u>, 71 F.R.D. at 372-373). <u>DeLay</u> also discussed the potential problems for a party to a case if the party is required to use depositions instead of live testimony, particularly where the credibility of the witnesses will be at issue. <u>Id</u>. <u>See</u> <u>Akers v. Norfolk & W. Ry.Co.</u>, 378 F.2d 78, 79 (4th Cir. 1967)[noting that depositions are "universally acknowledged to be inferior to the personal appearance of witnesses in court"].

   Other factors also come into play. There is evidence demonstrating the strong burden to Cook's health if he has to travel to South Carolina for a trial. <u>See</u> <u>discussion</u>, <u>supra</u>. Even though it may be necessary for Cook to testify via deposition due to his health even if the trial is in Virginia, he is much more likely to be able to offer live testimony if the trial is held there, since the courthouse is only a short distance from his home, while he would also be better able to assist with documents

---

  [9]Although Feralloy argues that the specifications of the Department of Transportation in Virginia (which is at least part of what these witnesses may address) *may* end up not being in dispute or the deciding factor in this case, based upon the current posture of the case and the defenses raised by SPIG, the Court cannot reach that conclusion at this time. At the hearing, the Court specifically broached the question of the possibility of some type of stipulation on this issue with Plaintiff's counsel. However, counsel was quite understandably unwilling to agree to any stipulations at that time.



or at the trial because of his close proximity to the courthouse. Cook played a central role in the underlying facts, and his assistance may therefore be needed at trial regardless of how the parties decide to proceed with his actual testimony. In addition to his health related problems if he travels, Cook attests to the financial burden for him to travel to South Carolina, and SPIG argues that because of Cook's ability to stay at his caretaker's residence, which is less than 20 miles away from the courthouse in Abingdon, Virginia, his cost would be reduced if the trial was held there. See Cook 2d Supp. Affidavit, at ¶ ¶ 19, 22. Further, SPIG's other non-party witnesses, even if they would voluntarily attend, would also have their costs significantly increased if the trial was in South Carolina.

With regard to a jury view, SPIG argues that "[t]o the extent that having a jury view some of the as yet unused steel Feralloy provided to SPIG is required, a large amount of such steel is present at SPIG's Bristol, Virginia facility." See Defendants' Memorandum, p. 11. This is the steel that had already been delivered and was rejected by Virginia DOT officials. While Feralloy counters that "to the extent that an inspection of the steel in question is necessary, 408 tons of the steel that SPIG ordered from [Feralloy] (at a purchase price of $531,216.00, but not yet paid for) remains at the Huger distribution center and is available for viewing there;" See Plaintiff's Memorandum, pp. 8-9; see also Herrmann Supplemental Affidavit, ¶ 17; that steel was never delivered to SPIG and has not been inspected by Virginia officials, or apparently even by SPIG.

Third, the Court must consider whether transfer of the case would be in the interest of justice. In deciding this issue, the Court should consider factors that are unrelated to the convenience of the witnesses and parties. Board of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc., 702 F.Supp. 1253, 1260 (E.D.Va. 1998). Such factors



include systematic integrity, fairness, the availability of compulsory process, the cost of obtaining the attendance of witnesses, the ease of access to sources of proof, the Court's familiarity with the applicable law, docket conditions, and the interest in having local controversies decided by local courts. Id; Optical Cable Corp. v. Massachusetts Elec. Const. Co., 21 F.Supp. 2d 582, 592 (W.D.Va. 1998). The cost of obtaining attendance of witnesses and the availability of compulsory process have already been discussed. With regard to the remaining factors, there has been no showing that the District of South Carolina is in a better position than the Western District of Virginia to resolve the matter, while SPIG points out that in the event a judgment is obtained and collection proceedings are necessary, Feralloy would have to proceed in Virginia with those proceedings.

As for access to sources of proof, while the availability of steel for inspection has already been discussed, Feralloy also argues that a substantial amount of the hard copy original documents related to the SPIG account are located in Feralloy's Huger distribution center,[10] including but are not limited to, SPIG's purchase orders, SPIG's material specifications, bills of lading and other shipping documents, as well as customer contact information. See Herrmann Supplemental Affidavit, ¶ 16; see Odgers Affidavit, ¶ 9; White Affidavit, ¶ 10. Feralloy argues that these documents are important to its ability to effectively prosecute its action and defend against SPIG's counterclaim. See Herrmann Supplement Affidavit, ¶ 16. Feralloy further argues that if the parties are allowed to proceed before this Court, Feralloy's representatives would be able to link directly into Feralloy's computer system at the Huger facility, which would provide easier and faster access to other critical documents and data for use in this case, and that local access would also

_____

[10]In the earlier action, Cook affirmed that Nucor documents were located in South Carolina. See Cook Supplemental Affidavit, ¶¶ 55-59.

11



minimize the significant security risks associated with remote access. <u>See</u> Love Supplement Affidavit, ¶ 9; Borzych Second Supplemental Affidavit, ¶ 10. However, although this factor does not favor transfer, "the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production." <u>Romano v. Banc of America Ins. Servs</u>, 528 F.Supp.2d 127, 132 (E.D.N.Y. 2007)(quoting <u>Am S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge North Am., Inc.</u>, 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007)("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents".))

Finally, with regard to what weight Feralloy's choice of forum should be accorded, there is a strong presumption in favor of a plaintiff's choice of forum when that forum is the plaintiff's home. <u>See</u> <u>DiMark Mktg. Inc. v. Louisiana Health Service and Indemnity Co.</u>, 913 F.Supp. 402, 408 (E.D.Pa. 1996). Here, however, although Feralloy maintains a South Carolina distribution center, it is a Delaware corporation, with its headquarters in Illinois. Indeed, South Carolina was not even Feralloy's first choice of forum. Rather, it initially sought to bring this action in Illinois where it is headquartered. The record also shows that Feralloy operates nationwide and even conducts business out of the country in Mexico. SPIG by contrast is a small company whose operations would be severely disrupted if it had to defend this action in South Carolina.

### Conclusion

Based on the foregoing, this Court finds that SPIG has met its burden to show that transfer is appropriate under § 1404(a). Although the Court acknowledges that merely transferring the inconvenience from one side to the other is not a permissible justification; <u>Vendeveld v. Christoph</u>, 877 F.Supp. 1160, 1167 (N.D.Ill. 1995); the equities in this case balance heavily in favor



of SPIG's requested transfer. Accordingly, SPIG is entitled to transfer based on convenience of the parties and witnesses. See Mims v. Proctor & Gamble D. Co., 257 F.Supp. 648, 655 (D.S.C. 1966) [transfer warranted where witnesses and documents were more accessible in transferee court]; American Commercial Lines, Inc., 588 F.Supp.2d at 945; DeLay, 70 F.R.D. at 372; SRAM Corp., 953 F.Supp 257; see also Realson v. University Medical Pharmaceuticals, No. 09-3277, 2010 WL 1838911 (D.S.C. May 6, 2010)[granting motion to transfer venue]. Therefore,

**IT IS ORDERED** that SPIG's motion to transfer venue pursuant to § 1404(a) is **granted**.

**IT IS SO ORDERED.**



_____
Bristow Marchant
United States Magistrate Judge

August 30, 2010
Charleston, South Carolina